1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VERISIGN, INC.,

              Plaintiff,

    v.

XYZ.com, LLC, and DANIEL
NEGARI,

              Defendants.

No. _____

Subpoena Relating to Civil Action No. 1:14-CV-01749 (Pending in United States District Court for the Eastern District of Virginia)

**NONPARTY DONUTS INC. MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER**

**ORAL ARGUMENT REQUESTED**

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 1

77257-0072/LEGAL126092088.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

    A.  Background ............................................................................................. 3

    B.  The Underlying Litigation ...................................................................... 4

    C.  The Subpoena ......................................................................................... 7

    D.  Verisign Confirms During a Meet and Confer That Its Subpoena Lacks
        Any Basis Under Rule 45 ....................................................................... 8

II.  ARGUMENT ..................................................................................................... 10

    A.  The Court Should Quash the Subpoena Because It Seeks Duplicative and
        Irrelevant Information and thereby Imposes an Undue Burden on Donuts,
        a Nonparty ............................................................................................. 10

    B.  In the Alternative, The Court Should Issue a Protective Order Narrowing
        the Subpoena to Non Duplicative Information Relevant to the Underlying
        Lawsuit .................................................................................................. 14

III.  CONCLUSION .................................................................................................. 16

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

77257-0072/LEGAL126092088.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
    No. 13-MC-0059, 2013 WL 5276124 (N.D. Iowa Sept. 17, 2013) ........................................11

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ......................................................................................11

*Compaq Computer Corp. v. Packard Bell Elec., Inc.*,
    163 F.R.D. 329 (N.D. Cal. 1995) ......................................................................................13

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir.1998) ......................................................................................11

*Dart Indus. Co., Inc. v. Westwood Chemical Co., Inc.*,
    649 F.2d 646 (9th Cir. 1980) ......................................................................................14

*Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*,
    No. 13–C–560, 2014 WL 5818756 (E.D. Wis. Nov. 10, 2014) ............................................12

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
    34 F.3d 774 (9th Cir. 1994) ......................................................................................11

*FTC v. AMG Servs., Inc.*,
    291 F.R.D. 544 (D. Nev. 2013)......................................................................................14

*Haber v. ASN 50th St., LLC*,
    272 F.R.D. 377 (S.D.N.Y.2011) ......................................................................................12

*High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*,
    161 F.R.D. 86 (N.D. Cal. 1995)......................................................................................11

*Hunsaker v. Proctor & Gamble Mfg. Co.*,
    No. 09–26666–KHV, 2010 WL 5463244 (D. Kan. Dec. 29, 2010) ........................................10

*Int'l Coal Grp., Inc. v. Tetra Fin. Grp., LLC*,
    No. 2:09–cv–115–CW–PMW, 2010 WL 2079675 (D. Utah May 24, 2010) ..........................12

*Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*,
    2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) ......................................................................13

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ......................................................................................13

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

77257-0072/LEGAL126092088.1

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................11

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ..........................................................................14

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ............................................................................................14

*WM High Yield v. O'Hanlon*,
   460 F. Supp. 2d 891 (S.D. Ind. 2006) ..............................................................11

## STATUTES

Lanham Act, 15 U.S.C. § 1125(a) ..............................................................................1, 6

## RULES

Fed. R. Civ. P. 26 ..............................................................................................10, 14

Fed. R. Civ. P. 26(b)(2)(C) ..........................................................................10, 11, 14

Fed.R.Civ.P. 26(b)(2)(C)(i) ....................................................................................12

Fed. R. Civ. P. 26(c) ................................................................................................14

Fed. R. Civ. P. 45 ............................................................................................ passim

Fed. R. Civ. P. 45(d)(3)(A)(iv) ...............................................................................11

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.      INTRODUCTION

Nonparty Donuts Inc. ("Donuts") respectfully requests that this Court quash the subpoena issued to it by Plaintiff Verisign, Inc. ("Verisign") in a lawsuit currently pending in the Eastern District of Virginia (the "underlying suit").  In the underlying suit, Verisign, the owner and operator of the .COM top level domain registry ("TLD"), has sued one of its emerging competitors, XYZ.com and Daniel Negari (collectively, "Defendants"), for allegedly making false and misleading anticompetitive statements in violation of the Lanham Act.

Donuts and Verisign are fierce competitors in the Internet domain registry market. Verisign is the incumbent in the industry and is trying to protect its market power, by suing one new entrant and sending subpoenas to many others.  But Donuts is not a party to the underlying lawsuit and is not related in any respect to XYZ.com.  Nevertheless, in an effort to obtain confidential documents from its largest emerging competitor, Verisign served Donuts with an overly broad and burdensome subpoena ("the Subpoena") that seeks information entirely duplicative of that sought by Verisign from Defendants in the lawsuit, and having no relevance to the claims in the underlying suit.  In Verisign's own words (during a meet and confer with Donuts' counsel), the Subpoena was issued to "double check" Defendants' document productions.  In other words, Verisign has asked this Court to invoke its authority under Fed. R. Civ. P. 45, not to obtain documents it could not otherwise obtain from an actual party in this matter, but rather to crudely use a nonparty (Donuts) as a "belt and suspenders" discovery tactic, and to get a free peek into its competitor's files in the process.

Because Verisign cannot use Rule 45 to drag nonparties into its discovery disputes, third party subpoena recipient Donuts respectfully requests that the Court quash the Subpoena for three reasons.  First, the Subpoena seeks information that is duplicative of and identical to discovery sought from the actual parties to the litigation: Defendants XYZ.com, LLC and Daniel Negari.  Specifically, the Subpoena demands that Donuts produce all its communications with

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Defendants relating to Verisign or the .COM top level domain ("TLD"). Setting aside the overly broad scope of that request, this third party subpoena unnecessarily burdens a nonparty with a request for documents that Verisign can and should get from the parties themselves.

Second, the Subpoena demands information that is patently irrelevant to the underlying claims in the litigation, and not reasonably calculated to lead to admissible evidence. For instance, the Subpoena not only asks for all of Donuts' communications with Defendants relating to Verisign or the .COM TLD (entirely overbroad because there is no limit to only those communications relating to the underlying litigation), but also all of Donuts' communications with a media organization (National Public Radio) regarding an interview by one of Donuts' employees that made no mention Verisign, .COM, Defendants, or any of the claims in the underlying litigation. These are not requests for relevant documents—these are poorly disguised hooks Verisign hopes to use to go on a fishing expedition through Donuts' files.

And third, the Subpoena demands that Donuts turn over all these irrelevant documents even though the Court in the underlying action has yet to rule on a critical dispositive motion (which could obviate the need for the Subpoena altogether), and even though discovery is currently ongoing between the parties. Specifically, the Court in the underlying action has yet to rule on a motion Defendants have filed for judgment on the pleadings. Furthermore, Verisign has sought thousands of documents from Defendants that are in the process of being produced. Donuts should not be forced to turn over highly competitive sensitive documents to its principal competitor while there is a motion pending that will determine whether the underlying litigation goes forward, and while the actual party to that lawsuit is in the process of producing these same documents. Verisign should wait for that process to play out.

Instead, Verisign's intentions are all too clear. Rather than seeking non-duplicative information relevant to the underlying litigation, Verisign—an industry-dominant multibillion dollar corporation—is using third party subpoenas as tactical devices to put pressure on the Defendant—a tiny, upstart competitor company. Indeed, Verisign has subpoenaed a dozen non-

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

77257-0072/LEGAL126092088.1

parties, some of whom happen to be its biggest competitors (like Donuts).  The motive for these subpoenas is transparent: Verisign is using the discovery process and the underlying lawsuit as a way to obtain confidential documents from its competitors.  This Court should block Verisign's attempt to misuse the third party subpoena process and grant Donuts' motion to quash.

Alternatively, Donuts moves for a protective order narrowing the scope of the subpoena only to documents pertinent to the underlying litigation and that are not duplicative of discovery available from parties to the litigation.

## A.    Background

Nonparty Donuts is a State of Washington-based Internet domain name registry that owns the rights to over one hundred eighty new TLDs.  TLDs are the suffixes at the end of domain names, such as ".COM" or ".GOV" and are an integral part of the system that connects internet users to the websites they want to visit.  Historically, the body that governs domain names, The Internet Corporation for Assigned Names and Numbers ("ICANN"), restricted the number of available TLDs.

Verisign, which owns the .COM and .NET TLDs (amongst others), is far and away the most dominant company in the domain name registry business.  In part because of legacy restrictions from ICANN and its predecessors limiting the number of TLD options available to consumers, Verisign's .COM TLD came to artificially enjoy a monopoly of sorts on Internet domain names with the overwhelming majority of domain names being registered as .COMs given the lack of other options.  And through these restrictions, Verisign also profited immensely from its ownership of the rights to .COM growing to what is today a dominant, multibillion dollar company.  However, in 2011, after years of widespread demand for new domain name possibilities, ICANN announced that it would release new TLDs to qualified applicants.  To be a qualified applicant, a company would need to demonstrate, among other things, substantial technical expertise in the field of domain name registration, including but not limited to,

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

knowledge of the complex systems and infrastructure that allows the domain name system (e.g., websites) to function.

Donuts was founded in 2010 by pioneers of the Internet domain name registration business and given the expertise, collective experience, and sophistication of its founders, was uniquely positioned to acquire the rights to many of these new TLDs.  After a process overseen by ICANN, Donuts has thus far acquired the rights, through its applicant subsidiaries, to approximately 180+ new TLDs, such as .GURU, .PHOTOGRAPHY and .SOCCER, among others.

As an domain name registry, Donuts is responsible not only for seamlessly managing the TLDs to which it owns the rights, but also for ensuring that the infrastructure behind these TLDs is secure and properly supported.  Donuts, like other TLD registries, utilizes third parties known as domain name registrars (such as GoDaddy or Network Solutions), to sell domain names to consumers (the registrants).  In 2014, Donuts began making new TLDs such as .GURU and .PHOTOGRAPHY available to consumers through domain name registries.

It is fair to say that Verisign sees Donuts as a potentially disruptive competitor in the TLD registry market.

**B.     The Underlying Litigation**

The underlying action captioned is currently pending in the Eastern District of Virginia. *Verisign, Inc. v. XYZ.com, LLC and Daniel Negari*, Case No. 1:14cv01749.  According to the complaint, Verisign is a domain name registry that operates the "infrastructure for a portfolio of top-level domain names [TLDs] that today includes .COM, .NET, .TV, .CC, .NAME, JOBS, .EDU, and.GOV."  E.D. Va. Complt. ¶¶ 10, 11 (Dkt. 1).  *See also* Declaration of Derek A. Newman In Support of Nonparty Donuts Inc. Motion to Quash Or In The Alternative For A Protective Order ("Newman Decl."), ¶ 2, Exhibit A (attaching a copy of the Complaint in the underlying action).  The Complaint alleges that Defendant XYZ is "the registry operator of the

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

newly launched .XYZ domain extension," and that "[Daniel] Negari is the Chief Executive Officer and founder of XYZ." *Id.* ¶¶ 13, 14.

The lawsuit is centered around what Plaintiff alleges is a "false and/or misleading promotional campaign" by Defendants about the .COM TLD that is comprised of the following:

- A video that appears on Defendant's website that "features what appears to be a dirty 1994 Honda Accord with a sputtering engine sound and a Nevada license plate that says '.COM.'" The Honda is shown "in a grainy video" while being "accompanied by unflattering and dated background music." *Id.* ¶ 19.  In addition to the "unflattering and dated background music," the video contains a voiceover that states, "with over 120 million dot coms registered today, it's impossible to find the domain name you want." *Id.* ¶ 20.  Finally, "[a]fter focusing on the old Honda, the ad then shows a shiny new Audi sports car pulling up next to the Honda with a Nevada license plate that says '.XYZ'" while the "video changes from grainy to clear, and the music changes to a  more upbeat and modern style." *Id.* ¶ 21.

- Negari casually opining during an April 2014 interview on National Public Radio that with respect to the availability of domain names in .COM that "[a]ll of the good real estate is taken.  The only thing that is left is something with a dash, or maybe three dashes and a couple of numbers in it." *Id.* ¶ 27.

- Defendants' alleged representations "falsely attributed to supposed neutral third parties statements suggesting that XYZ is the 'next .com.'" *Id.*  ¶ 31.

- Defendants' alleged use of a "scheme" to "overstate the number of legitimate .XYZ domain name registrations—which serves to falsely and unfairly support XYZ's claims to being the next .COM and the fastest growing new gTLD" and use of "this scheme to deceptively inflate the success and desirability of .XYZ as a .COM competitor." *Id.* ¶ 52.

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In short, Verisign's lawsuit boils down to allegations that Defendants portrayed .COM in an "unflattering" light by comparing it to an old dirty Honda; that Defendants disseminated false facts through statements of opinion that it was "impossible to find the domain name you want" and that "all the good real estate is taken" in the .COM TLD; and that Defendants have misrepresented their success in registering new domain names under the .XYZ TLD.  Based on these allegations, Verisign seeks preliminary and permanent injunctive relief, disgorgement of profits, enhanced damages, attorneys' fees and other damages pursuant to Section 43(a) of the Lanham Act, which prohibits false or misleading advertising and unfair competition in interstate commerce.  *Id.* ¶ 1.

The allegations in the underlying litigation most pertinent to resolution of this motion are undisputed and are as follows. First, Donuts is not a party to the underlying action and there are no allegations, facts or claims suggesting that Donuts has any involvement whatsoever.  In fact, there is no allegation or reference to Donuts in the Complaint.  Second, the parties are currently engaged in ongoing discovery and Verisign has issued over 24 requests for production to Defendants seeking, among other things, *all* of Defendants' communications with *any* third parties that mention Verisign or .COM.  *See* Newman Decl. ¶ 3, Exhibit B (Attaching discovery requests issued by Verisign to Defendants). Verisign's discovery requests to Defendants are extremely broad and all encompassing.  *Id.*  ¶ 4.  Third, while discovery is ongoing between the parties, there is no indication that Verisign will not receive the discovery it seeks from Defendants who have already produced several hundred pages of documents and are in the process of producing documents that are responsive to all of Verisign's discovery requests.  *Id.* ¶¶ 7, 8.[1]

---

[1] Indeed, pending motions to compel and for a protective order between the parties were just decided on May 15, 2015.  The dispute in the pending motions centered primarily on Verisign's refusal to agree to a two-tiered approach to a protective order that included both a "Confidential" and "Outside-Counsel Eyes Only" designation. Newman Decl. ¶ 9.  Verisign took the position that the "Outside-Counsel Eyes Only" designation was unnecessary and insisted that Verisign's personnel—including its entire board of directors, several top level managers and its entire in-house legal team—be able to freely access and review Defendants' highly confidential, sensitive and propriety material.  *Id.*  Ultimately, the Court ruled that the parties should submit a joint protective order by May 22,

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Finally, there is a dispositive motion pending in which Defendants are seeking a judgment on the pleadings based on the frivolity of the claims in Verisign's lawsuit.  In other words, Verisign's discovery requests to third parties—which include approximately a dozen subpoenas to nonparties, including Donuts and ICANN—may in fact be moot should the Eastern District of Virginia resolve this dispositive motion in Defendants' favor.  *Id.* ¶ 11.

### C.    The Subpoena

On May 5, 2015, Verisign served a document subpoena on Donuts seeking four categories of documents.  Declaration of Elvira Castillo in Support of Nonparty Donuts Inc. Motion to Quash ("Castillo Decl."), Exhibit 1.  The four categories include all communications (i) with Defendants relating to Verisign or the .COM TLD from January 1, 2012 to present; (ii) with Defendants relating to the availability of unregistered domain names in the .COM TLD from January 1, 2012 to present; (iii) with Adrienne McAdory of .WED, Thomas Brackey, or any employee, agent or representative of National Public Radio relating to the availability of unregistered domain names in the .COM TLD, including but not limited to, communications related to Daniel Schindler's April 2014 interview with National Public Radio; and (iv) internal communications relating to Daniel Schindler's April 2014 interview with National Public Radio regarding the .COM TLD.

Categories 1 and 2 are duplicative of documents sought from Defendants in the action.  *See* Newman Decl., Ex. B (attaching Verisign's First Set of RFPs).  For instance, Verisign's RFP No. 17 to Defendants seeks "All communications between Negari or XYZ *and any third person referencing .COM or Verisign*." *Id.* (emphasis added).  And Verisign's RFP No. 14 seeks "All emails to or from Negari mentioning .COM or Verisign (including, but not limited to, communications between Negari and third parties, including domain name commentators such as Rick Schwartz, Andrew Allemann and NPR." *Id.*  In other words, Categories 1 and 2 of the

---

2015 that included two-tiers. The second tier would be "Attorneys' Eyes Only" which would allow only outside counsel and two attorneys inside Verisign to view documents designated under that tier.  The Court also ruled that Defendants could produce documents on a rolling basis.  *Id.*

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Subpoena to Donuts can be (and indeed are in the process of being) obtained through discovery from a party to the lawsuit.  *Id.*, ¶¶  4, 7, 8. Therefore, there is no need or justification to obtain these documents from a nonparty.

Categories 3 and 4 are more confounding.  During the NPR interview in which Defendant Daniel Negari opines that, "all of the good real estate is taken" with respect to the availability of domain names in .COM (Complaint ¶ 27), NPR also separately interviewed other owners of TLDs including Adrienne McAdory, the owner of a .WED TLD, Thomas Brackey the co-owner of the .MENU TLD, and Donuts Executive Vice President, Daniel Schindler ("Mr. Schindler").  *See* Castillo Decl., Ex. 2 ( attaching transcript of NPR interview).  During the interview that aired, Mr. Schindler made no mention of Verisign, the .COM TLD or the availability (or lack thereof), of domain names in .COM.  *Id.*  Nor does the transcript reveal that Mr. Schindler made any statements about XYZ.com, Mr. Negari, or about Mr. Negari's opinions about Verisign and the .COM TLD.  Instead, Mr. Schindler's comments focused exclusively on the number of TLDs for which Donuts had applied and the fact that one of those TLDs (.GURU) had recently gone live and quickly registered 50,000 web addresses.  *Id.*

**D.     Verisign Confirms During a Meet and Confer That Its Subpoena Lacks Any Basis Under Rule 45**

In an effort to understand why Verisign would demand that Donuts produce such irrelevant and overly broad information (such as all internal communications relating to Daniel Schindler's April 2014 interview with NPR), Donuts requested a meet and confer with Verisign's counsel.  On May 14, 2015, counsel for Donuts and Verisign conducted a telephone conference to discuss the Subpoena.  Castillo Decl., ¶ 6.  Donuts' counsel pointed out that at least two of Verisign's document requests to Donuts seek information duplicative of that sought from Defendants in the litigation.  *Id.* ¶ 8.  But Verisign was unwilling to modify or narrow the scope of the subpoena in any way, despite acknowledging this overlap.  *Id.*  ¶¶ 9, 10. Instead, Verisign suggested that even if there was an overlap, that it was necessary to obtain duplicative

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

documents from Donuts in order to double check that Defendants were producing everything. *Id*. ¶ 9. Verisign's counsel did not indicate that Defendants had given Verisign any reason to believe that Defendants would not be producing all documents responsive to Verisign's document requests. *Id*.

Worse still, Verisign offered no justification or explanation for how Requests 3 and 4 were relevant to the underlying litigation. For instance, Request 4 seeks Donuts' internal communications about Schindler's interview, which would not be relevant to Verisign's claims against XYZ and Daniel Negari. *Id*. ¶ 11. When pressed on why or how this information was relevant to the underlying claims—a basic prerequisite for issuing a third party subpoena—Verisign's counsel demurred, and was unable to provide a response. *Id*. In other words, when given the opportunity to explain to Donuts why the Subpoena was consistent with the purpose and spirit of Rule 45, Verisign was at a loss for words.

During the meet and confer, Verisign's counsel stated that he would review Requests 3 and 4, as well as the transcript of the NPR interview and get back to counsel for Donuts on the relevance of the requests. Castillo Decl. ¶¶ 11, 12. As of May 17, 2015, Donuts' counsel still had received no response on the issue despite informing Verisign's counsel that Donuts would move to quash on May 18, 2015, if the parties could not reach an agreement. *Id*. ¶ 13. On May 18, 2015, the same day Donuts was to file its motion, Verisign's counsel sent an email purporting to address the relevance issue of Requests 3 and 4. *Id*. ¶ 14, Ex. 3 (attaching email exchange between Verisign's counsel and counsel for Donuts). In this email exchange, Verisign speculates (without any factual or evidentiary support) that simply because Donuts was *also* featured in the NPR interview, that Negari "likely communicated" with Donuts, and that Donuts "likely . . . vetted [Negari's] speaking points." *Id*. Setting aside Verisign's reliance on a conspiracy theory to rummage through a nonparty competitor's documents, Verisign's *post hoc* relevance justification provides additional support to quash the Subpoena: if someone from

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

77257-0072/LEGAL126092088.1

Donuts was "communicating with" and "vetting" Negari's talking points in advance of the NPR interview, Verisign will be able to obtain those documents from Negari himself.

Simply put, Verisign could not drum up a reason for why Requests 3 and 4 are relevant in advance of (or during) the parties' meet and confer—a basic box Verisign should have checked *before* issuing the Subpoena in the first place. And now, Verisign wants to rely on a tortured explanation that only undermines the need to obtain documents from Donuts, because it shows that there is no reason why Verisign cannot simply get these documents from the actual parties in the litigation. The Court should quash the Subpoena.

## II.     ARGUMENT

### A.     The Court Should Quash the Subpoena Because It Seeks Duplicative and Irrelevant Information and thereby Imposes an Undue Burden on Donuts, a Nonparty

The Federal Rules of Civil Procedure contain several mechanisms designed to prevent parties from utilizing discovery as a strategic tool to harass, burden, or otherwise gain improper advantages in litigation. In particular, courts take special care to protect nonparties from being improperly or unnecessarily dragged into litigation that does not involve them. For example, discovery against nonparties is obtained by subpoena. Fed. R. Civ. P. 45. However, "[a]ll discovery, including that sought through a subpoena, is subject to [Fed. R. Civ. P. 26(b)(2)(C)'s] limits." *Hunsaker v. Proctor & Gamble Mfg. Co.*, No. 09–26666–KHV, 2010 WL 5463244, at *4 (D. Kan. Dec. 29, 2010). In turn, Rule 26 explicitly states that a court "must limit the frequency or extent of discovery otherwise allowed by the[] [Federal] rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 10

importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Furthermore, under Rule 45(d)(3)(A)(iv) a district court "must quash or modify a subpoena that . . . subjects a person to undue burden." Courts have broad discretion to determine whether a subpoena is unduly burdensome. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation and quotation marks omitted). And "[n]on-party status is a significant factor a court must consider when assessing undue burden for the purpose of a Rule 45 motion." *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895-96 (S.D. Ind. 2006); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry); *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (noting that "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts"); *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *6 (N.D. Iowa Sept. 17, 2013) ("In considering motions to quash, courts routinely give special consideration to nonparties.").

The "undue burden" in Rule 45(d)(3)(A)(iv) is a "case specific inquiry," and balances the need of the subpoenaing party for the information and burden on the nonparty. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014). Specifically, to determine whether there is undue burden, a court must consider factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* at 409-10. Courts regularly quash subpoenas that seek cumulative or duplicative document production, because these sorts of subpoenas rule afoul of Rule 45's "undue burden" standard.

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*See Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y.2011) (quashing a subpoena that was duplicative of already answered document requests); *Int'l Coal Grp., Inc. v. Tetra Fin. Grp., LLC*, No. 2:09–cv–115–CW–PMW, 2010 WL 2079675, at *2 (D. Utah May 24, 2010) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)'s limitation on unreasonably cumulative and duplicative discovery to quash a duplicative subpoena that sought documents "likely" already produced); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc*., No. 13–C–560, 2014 WL 5818756, at *3 (E.D. Wis. Nov. 10,  2014) (pointing out that where a non-party subpoena sought production of material already produced "the duplicative subpoena request would subject [the nonparty] to undue burden and is quashed.").

Here, as described above, at least two of the requests for production sought from Donuts are entirely duplicative of requests sought from Defendants in this action.  In other words, Verisign does not need these documents from Donuts at all because it is getting them directly from Defendants.  In fact, Verisign's counsel acknowledged during a meet and confer with Donuts that one of the main reasons it subpoenaed Donuts for these document was simply to double check the completeness of Defendants' production.  Castillo Decl.  ¶ 9.  But Donuts, as a nonparty, should not be forced to turn over its business records to its top competitor simply because Verisign wants to benchmark Defendants' discovery responses against Donuts' records.  Verisign cannot use Donuts (or any nonparty for that matter) as a pawn in a preemptive (and baseless) discovery dispute against Defendants.  Such harassment should not be permitted.

In short, because there is no indication that Verisign will not be able to obtain the documents it seeks from Donuts from the Defendants in the litigation, and because Verisign's stated reason for this subpoena is invalid on its face, there is no reason to force Donuts to incur the expense, time, and invaluable resources to respond to the Subpoena.  Castillo Decl. ¶¶ 2-4, 9.  Accordingly, the Court should quash Requests 1 and 2 on the basis that they seek duplicative information available from the parties (and in fact, already in the process of being obtained from Defendants).

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 12

In addition to seeking duplicative information, the Subpoena also seeks overbroad and irrelevant information again in an attempt to harass Donuts.  A subpoena may be unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of the litigation.  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003) (holding subpoenas properly quashed where it was clear they were "served for the purpose of annoying and harassment and not really for the purpose of getting information."). Irrelevant requests are per se unduly burdensome.  *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, *then any burden whatsoever imposed upon* [nonparty] would be by definition 'undue.'") (emphasis added).  In other words, where a party has subpoenaed a non-party, " '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'"  *Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).

Here, during the parties' meet and confer, Verisign could articulate no reason why the communications between Donuts employee Mr. Schindler and NPR (or internal communications regarding Mr. Schindler's interview) has any relevance to claims that Mr. Negari and XYZ made false or misleading representations about the .COM TLD or XYZ's domain registration numbers. Castillo Decl., ¶ 11.  If Verisign cannot explain to Donuts why these document requests are relevant and necessary for the underlying litigation in a pre-scheduled meet and confer, Verisign cannot justify these requests to the Court.  And to the extent that Verisign conjures up some explanation in an opposition brief—that it otherwise refused to offer during its meet and confer with Donuts—the Court should disregard that justification as an abusive sandbagging tactic.  If Verisign truly had a reason for why these documents are relevant and necessary, it was obligated to disclose that reason to Donuts so that Donuts could take Verisign's position into account when

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(a) determining whether to file a motion to quash, or alternatively (b) how to frame a protective order.

But regardless of whether Verisign manufactures some post hoc justification for these requests, that it could not explain to Donuts why Donuts should turn over these documents speaks volumes about the lack of propriety of the Subpoena itself.

Accordingly, the Court should quash Requests 3 and 4, which seek irrelevant information.

**B.      In the Alternative, The Court Should Issue a Protective Order Narrowing the Subpoena to Non Duplicative Information Relevant to the Underlying Lawsuit**

Finally, under Federal Rule of Civil Procedure 26(c), a court may, for good cause, issue a protective order protecting a person from undue burden or expense by forbidding discovery. Fed. R. Civ. P. 26(c).  "The Supreme Court has interpreted th[e] language [of Rule 26] as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'"  *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  Courts have acknowledged that "discovery permissible from nonparties is narrower than that permissible from parties to the action," *FTC v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013), and that "[w]hile discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Dart Indus. Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980).

The same factors weighing on a Court's ability to quash a motion inform its ability to issue a protective order.  For example, a court can issue a protective order, by motion (or sua sponte), "if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "[the order is needed] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Rule 26(b)(2)(C).

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 14

77257-0072/LEGAL126092088.1

Here, as described in detail above, Requests 1 and 2 seek only duplicative information Verisign is obtaining from a party. Should the Court decide against quashing the subpoena outright, Donuts respectfully requests that the Court issue a protective order narrowing the subpoena only to non-duplicative requests that have relevance to the underlying litigation.

Furthermore, Donuts continues to believe that Requests 3 and 4, as currently written, seek irrelevant information. As a nonparty to the litigation, it is not Donuts' job to reformulate facially irrelevant document requests particularly when counsel for Verisign—who presumably wrote the document requests to begin with—could not articulate a basis for them during a meet and confer. Nevertheless, if the Court decides to accept a post-hoc justification from Verisign identifying the relevance of Requests 3 and 4 to the underlying litigation, Donuts requests that the Court limit the subpoena to Request 3 only—which seeks external communications. Request 4, which seeks "all internal communications relating to Daniel Schindler's April 2014 interview with National Public Radio regarding the .COM gTLD," implicates confidential proprietary information, particularly since during the NPR interview, Mr. Schindler spoke *exclusively* about Donuts' business model including the number of TLDs Donuts applied for and the number of new registrations for one of those TLDs, .GURU. Notably, Mr. Schindler made absolutely no mention of Verisign, the .COM TLD, XYZ.com, Mr. Negari or any of Mr. Negari's comments about the availability of domain names in the .COM TLD during the interview that aired.[2] Donuts should not have to produce internal communications about an interview in which a company executive spoke about the Donuts business model particularly when Verisign could articulate no basis for the relevance of this information during the meet and confer and continued

---

[2] Even if the Court credits Verisign's last minute explanation for why Requests 3 and 4 had any relevance to the underlying litigation, taken at face value, this explanation still establishes no basis as to why Donuts' *internal* communications relating to Daniel Schindler's April 2014 interview are relevant. *See* Ex. 3 to Castillo Decl. (attaching email from Verisign's counsel which explained the relevance of Requests 3 and 4 as follows: "Mr. Schindler likely communicated with Mr. Negari or with NPR related to this interview—which published, among other things, a false statement by Negari about the availability of domain names in .COM. It is likely that Daniel Schindler vetted his speaking points and his communications with NPR (and Negari).").

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

to offer no relevance even in its last minute email to Donuts' counsel after the meet and confer in which Verisign attempted to explain the relevance of its requests.

### III.   CONCLUSION

Donuts understands that the nature of litigation sometimes requires participation from nonparties in the form of discovery.  But given the facts in this case, discovery from Donuts is completely unwarranted. For the reasons stated above, Donuts respectfully requests that the Court quash the subpoena in its entirety.  In the alternative, Donuts requests that the Court narrow the subpoena as described in Section II.B above.

DATED:  May 18, 2015.

*s/Thomas L. Boeder*
Thomas L. Boeder, WSBA #408
TBoeder@perkinscoie.com
Elvira Castillo, WSBA #43893
ECastillo@perkinscoie.com
**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Nonparty Donuts Inc.

**CERTIFICATE OF SERVICE**

Elvira Castillo certifies and states:

I certify that on May 18, 2015, I filed the foregoing document with the Clerk of the Court

by email, and caused said document to be served on the attorneys of record listed below by email

and by overnight mail:

**Plaintiff's Attorneys:**

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Kevin W. Weigand (VSB No. 81073)
Taylor Sumner Chapman
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
(703) 905-1449 (Telephone)
(703) 821-8949 (Facsimile)
rkmiller@venable.com
nmdepalma@venable.com
kwweigand@venable.com
tschapman@venable.com
Counsel to Plaintiff Verisign, Inc.

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**Defendants' Attorneys:**

Timothy J. Battle
524 King Street
Alexandria, VA 22320-4593
(703) 836-1216 Tel
(703) 549-3335 Fax
Email: tjbattle@verizon.net


Derek A. Newman
Newman Du Wors, LLP
100 Wilshire Boulevard
Suite 940
Santa Monica, CA 90401
310.359.8188 Tel
310.359.8190 Fax
Email: dn@newmanlaw.com


Counsel to Defendants XYZ.COM, LLC and Daniel Negari


     I declare under penalty of perjury under the laws of the United States of America and of

the state of Washington that the foregoing is true and correct.

     EXECUTED at Seattle, Washington on May 18, 2015.


*s/ Elvira Castillo*, WSBA No. 43893
Attorneys for Non-party Donuts Inc.
**Perkins Coie** LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: ECastillo@perkinscoie.com

MOTION TO QUASH OR FOR PROTECTIVE
ORDER – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000