UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERISIGN, INC., <br><br> Plaintiff, <br><br> vs. <br><br> XYZ.COM, LLC AND DANIEL NEGARI, <br><br> Defendants. | Case No. 2:15-cv-00871-TSZ <br><br> Re:  Subpoena Issued In Civil Action No. 1:14-CV-01749 (E.D. Va.) <br><br> VeriSign, Inc.'s Motion For Reconsideration And Disposition Of Its Outstanding Motion To Compel <br><br> Note On Motion Calendar:  June 29, 2015 |

VeriSign, Inc.'s Motion For Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

**MOTION FOR RECONSIDERATION**

VeriSign, Inc. ("Verisign") respectfully asks this Court to reconsider its order granting, in part, Donuts Inc.'s Motion to Quash.  Newly discovered documents (previously withheld by Defendants XYZ.com LLC and Daniel Negari in the underlying matter) demonstrate the materials subpoenaed by Verisign are directly related to the dispute pending in the Eastern District of Virginia.  These new documents show a very strong alliance between Donuts and XYZ executives, against Verisign.  That relationship is not only relevant to the substantive claims pending in Virginia under the Lanham Act, it could also shed light on whether XYZ acted in bad faith, which is an element required to recover attorneys fees under the Act.

In its opening brief in support of its motion to quash, Donuts invoked sweeping rhetoric to accuse Verisign of abusing the tools of discovery to obtain "a free peek" into Donuts' files. Mot. at 1, ECF No. 1.  But newly discovered evidence has revealed it was Donuts—through its Chief Executive Officer—that was actually behind the scenes advising XYZ to engage in exactly that kind of abusive discovery against Verisign.  Moreover, contrary to Donuts' prior efforts to depict itself as a complete stranger to the underlying litigation,[1] the new discovery has exposed emails that show Donuts' CEO, Paul Stahura, providing secret advice to Negari, directly about the litigation in Virginia with Verisign.  Donuts' CEO has, in fact, encouraged Negari to use discovery in Verisign's case as a way to delve into Verisign's pricing practices and business relationships.  Not only is this hypocrisy offensive, it upsets the very factual premise—that Donuts is not involved in the XYZ litigation—upon which Donuts advanced its arguments in favor of its motion to quash before this Court.  The bottom line is that fairness dictates that Verisign is entitled to the limited discovery it seeks, and Donuts' claim of burden rings hollow in light of the behind-the-scenes conduct of its CEO, Mr. Stahura.

---

[1] For example, in its opening brief, Donuts emphasized that it "is not a party to the underlying lawsuit and is not related in any respect to XYZ.com" Mot. at 1. ECF No. 1.  This statement implies that Donuts has no relationship with XYZ and Negari, which is completely false.

| | |
|---|---|
| VeriSign, Inc.'s Motion For Reconsideration | Quinn Emanuel Urquhart & Sullivan LLP |
| Case No. 2:15-cv-00871-TSZ | 600 University Street, Suite 2800 |
| | Seattle, WA 98101 |
| -1- | Phone: (206) 905-7000 |

In light of this newly discovered evidence, Verisign respectfully requests that the Court reconsider its June 15, 2015 decision to quash the portions of Verisign's subpoena that sought the production of internal communications regarding the National Public Radio program in which Negari made false statements regarding the availability of .COM domain names. *See* Order ¶ 2(a), ECF No. 13.  Given the nature of Stahura's relationship with Negari and the record of their close communications about Verisign's lawsuit against XYZ and Negari, it is at least plausible, if not likely, that Stahura discussed Negari's statements about the availability of .COM domain names with other Donuts employees, including a Donuts employee named Daniel Schindler who also was a guest on that NPR program.  Communications like these could provide highly probative evidence to support Verisign's claims in the underlying litigation because, for example, they might illuminate Negari's state of mind at the time of his false representations, including whether Negari knew that the statements were false when he made them.

**I.   The Court Should Reconsider Its Decision To Account For Newly Discovered Facts Regarding The Relationship Between Donuts And XYZ.**

In this District, a court may grant a motion for reconsideration when there is a "showing of *new facts* or legal authority which could not have been brought to its attention earlier with reasonable diligence."  Local Civ. R. 7(h) (emphasis added).  In this case, reconsideration is appropriate because after Verisign's reply brief was filed,  XYZ produced documents in the underlying litigation that revealed new facts surrounding the relationship between Paul Stahura, Donuts' CEO, and Daniel Negari, XYZ's CEO.  Given the timing of that production, Verisign was unable to bring these materials to the Court's attention before its initial ruling.[2]

At the time that briefing on Donuts' motion to quash closed, XYZ and Negari had

---

[2] On Saturday, June 13, 2015—four days after briefing in this matter closed and just two days before the Court ruled on Donuts' motion—XYZ and Negari produced more than 80,000 pages of documents in the underlying litigation. DePalma Aff. ¶¶ 4-5.  Sixteen pages of emails and associated attachments that had been exchanged between Negari and Paul Stahura, Donuts CEO, were buried within that weekend production. *Id*.  Verisign did not discover these materials until after the Court had issued its June 15, 2015 ruling regarding Donuts' motion to quash.

VeriSign, Inc.'s Motion For Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-2-

1  produced just six pages of email correspondence between Stahura and Negari.  DePalma Aff. ¶ 3.
2  Then, in a 2 a.m. production the weekend after briefing on this motion closed—and only *after*
3  Verisign filed a motion in the trial court to compel full compliance with its outstanding
4  document requests in the underlying case—XYZ produced sixteen additional pages of
5  correspondence between Stahura and Negari.  DePalma Aff. ¶¶ 4-5.  These new documents
6  show the true nature of the relationship between Stahura and Negari, and their companies, and
7  they expose that Stahura and Negari are in direct communication about the underlying XYZ
8  lawsuit, discovery in the underlying lawsuit, and Verisign in general.

9        The Court should have the opportunity to review the relevant new documents, which
10  Verisign has submitted in support of this motion for reconsideration, before rendering its final
11  decision.  *See* DePalma Aff. Ex. 1.  Donuts and XYZ should not be permitted to help one another
12  behind the scenes to obtain discovery from Verisign, and then argue in front of this Court that
13  neither one knows the other to shield relevant evidence from discovery and impede Verisign's
14  discovery in support of its claims.

15  **II.  Internal Donuts Communications Between Stahura And Other Donuts Personnel
16       Could Be Highly Relevant To Verisign's Claims.**

17        The newly discovered email communications between Stahura and Negari show that the
18  two CEOs have been in close contact regarding the very issues that are at the center of the
19  underlying litigation.  Stahura has provided advice and counsel to Negari regarding the litigation
20  strategies that XYZ should employ in the underlying case.  Indeed, in one email exchange,
21  Stahura advised Negari to use the underlying litigation as an opportunity to "get a ton of
22  discovery out of Verisign," including information regarding whether Verisign is "discounting" or
23  offering "rebates."  DePalma Aff. Ex. 1 at XYZ00213632.  Stahura further urged Negari to
24  pursue the production of communications between Verisign and its business partners.  *Id*.  Other
25  emails between Stahura and Negari reveal that the two CEOs have arranged to meet in person as
26  recently as March 2015.  *Id*. at XYZ00213651.  XYZ and Negari are following Stahura's
27  directions.  They have, for example, served over one hundred separate document requests on

28  VeriSign, Inc.'s Motion For Reconsideration      Quinn Emanuel Urquhart & Sullivan LLP
Case No. 2:15-cv-00871-TSZ      600 University Street, Suite 2800
    Seattle, WA 98101
-3-      Phone: (206) 905-7000

Verisign and, as Stahura advised, sought production of communications between Verisign and its business partners. DePalma Aff. ¶ 11. Indeed, just as Stahura recommended, XYZ has issued a third-party subpoena to GoDaddy, one of the Verisign business partners that Stahura specified in his email advice to Negari as a potential target for discovery. *See id.*; DePalma Aff. Ex. 1 at XYZ00213632.

All of these documents, which were produced *after* briefing closed in this matter, reveal that the relationship between Donuts and XYZ is not at all what Donuts previously led the Court to believe. The close but secret coordination between Stahura and Negari on this lawsuit makes it reasonable to believe that Stahura also communicated with other Donuts personnel, including Mr. Schindler, about Negari's appearance on the NPR program and his false statements during that show. If Stahura advised Schindler that Negari intended to address the availability of .COM domain names during that appearance, or reacted to those statements in candid communications with other Donuts employees based on his discussions with Negari, such communications could provide unique evidence of Negari's state of mind at the time those false statements were made. That evidence, if discovered, would prove to be highly relevant to Verisign's claims. For example, such evidence would be relevant to Verisign's request for attorney's fees under the Lanham Act, where Verisign must show that Negari acted in bad faith. *See Employers Council On Flexible Comp. v. Feltman*, 384 F. App'x 201, 204-05 (4th Cir. 2010).

Based on the discovery of the newly produced emails between Stahura and Negari, Verisign respectfully submits that it is entitled to discovery of all internal Donuts communications that are in any way related to Schindler's NPR appearance, including any communications between Stahura and other Donuts employees discussing Negari's comments. Verisign therefore requests that the Court reconsider its decision to quash this part of the subpoena, reverse that decision, and order Donuts to make a full and complete production of these materials promptly. *Cf.* Order ¶ 2(a), ECF No. 13.

VeriSign, Inc.'s Motion For Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-4-

**MOTION FOR DISPOSITION OF OUTSTANDING MOTION TO COMPEL**

On June 15, 2015, the Court deferred ruling on whether Donuts must produce any of its communications with the Defendants in the underlying action that are responsive to Verisign's subpoena.  Order ¶ 2(c), ECF No. 13.  The Court deferred its ruling to allow the trial court to consider a motion to compel that had been filed by Verisign in the underlying case, seeking the production of communications between XYZ and Donuts in response to party discovery.  *Id*.  This matter is now ripe for resolution by the Court.

After Verisign moved to compel compliance in the trial court in the Eastern District of Virginia, XYZ produced additional documents.  DePalma Aff. ¶¶ 4-5.  To determine what XYZ had produced before burdening the trial court in Virginia with further motions practice, Verisign withdrew its motion to compel, without prejudice.  DePalma Aff. ¶ 6.  Verisign has since reviewed the correspondence with Donuts that the Defendants provided in their latest production and remains concerned that the production is deficient especially as it relates to the communications between Donuts and XYZ or Negari.  DePalma Aff. ¶ 10.

For one thing, the tenor of the emails between Stahura and Negari strongly suggests that they have a close personal relationship. Yet, in their entire production, XYZ and Negari produced emails from just six dates, which comprise only about thirty total pages.  *See* DePalma Aff. ¶¶ 3-5.  Raising concerns higher, the trial court in the Eastern District of Virginia already has found that Defendant Negari has been evading his discovery obligations.  On June 25, 2015, the trial court heard argument on a motion to re-depose Negari based on his evasive answers to questions under oath during his deposition in California on June 13, 2015.  DePalma Aff. ¶¶ 7-9.  In granting the motion in part, the magistrate judge noted that he was "quite appalled" by Negari's evasive tactics and ordered Negari to appear at his own expense in Virginia for four more hours of deposition examination.  DePalma Aff. Ex. 2 at 22:15-19; 24:8-10, *see also id*. at 4:4-5 (the court observing "the answers given by Mr. Negari reflect a very intentional effort to not understand and not provide candid answers."); 4:16-20 (the court questioning Defendants' counsel: "Is there any way that you can explain to me how Mr. Negari might have felt that both

VeriSign, Inc.'s Motion For Reconsideration  
Case No. 2:15-cv-00871-TSZ  
Quinn Emanuel Urquhart & Sullivan LLP  
600 University Street, Suite 2800  
Seattle, WA 98101  
Phone: (206) 905-7000

-5-

of those answers were appropriate amongst adults in sophisticated litigation as opposed to the kinds of answers that small children give to their parents when they're feeling truculent?"); *see also* Minute Entry, ECF No. 104, *VeriSign, Inc. v. XYZ.com LLC*, Case No. 1:14-cv-01749-CMH-MSN (E.D. Va.).  In light of this and other obstructionist tactics that have been repeatedly used by XYZ, DePalma Aff. ¶ 10, there is little reason to believe that Negari or his company produced all relevant communications with Donuts.  In such circumstances, requiring Donuts to make a full production is not unreasonable.

Verisign recognizes that Donuts is a third party in this case, and recognizes that courts can and should presumptively protect such third parties from unduly burdensome discovery.  Here, however, where the third party in question (Donuts) is literally providing the defendants with litigation advice, the court should cast aside any such presumption especially where the limited documents sought do not present an undue burden to produce and, as demonstrated above, are likely to be highly relevant to the case.  Moreover, it is a rarity when two parties to a transaction, conversation or relationship maintain or produce the same documents.  Variances in what documents were maintained by each party invariably occur.  Accordingly, the only way to ensure Verisign obtains more complete discovery of the communications between XYZ and Donuts is if this Court orders Donuts to produce them.  Verisign therefore respectfully requests that the Court order Donuts to fully comply with the outstanding document requests in its subpoena by producing all responsive communications between Donuts and Defendants XYZ or Negari.

## CONCLUSION

For the reasons set forth herein, Verisign respectfully requests that the Court reconsider its June 15, 2015 order granting Donuts' motion to quash with respect to internal Donuts communications regarding Daniel Schindler's NPR appearance and order Donuts to produce all materials within its possession, custody, or control that are responsive to the subpoena.

VeriSign, Inc.'s Motion For Reconsideration  
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP  
600 University Street, Suite 2800  
Seattle, WA 98101  
Phone: (206) 905-7000

-6-

1  DATED: June 29, 2015             Respectfully submitted,

2                                    QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
3

4

5                                      By */s/ Jenny A. Durkan*
                                          Jenny A. Durkan
6                                         Attorneys for VeriSign, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 VeriSign, Inc.'s Motion For Reconsideration              Quinn Emanuel Urquhart & Sullivan LLP
   Case No. 2:15-cv-00871-TSZ                                    600 University Street, Suite 2800
                                                                           Seattle, WA 98101
                                         -7-                          Phone: (206) 905-7000

# CERTIFICATE OF SERVICE

I, Jenny Durkan, am a partner at Quinn Emanuel Urquhart & Sullivan, LLP, and I represent VeriSign, Inc. in this action. I hereby certify that on June 29, 2015, I caused the foregoing document to be served on Donuts Inc. by filing the document through ECF and emailing the company's counsel of record at the addresses below:

Thomas L. Boeder
TBoeder@perkinscoie.com

Elira Castilllo
ECastillo@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: June 29, 2015                    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Jenny A. Durkan*
    Jenny A. Durkan
    Attorneys for VeriSign, Inc.

VeriSign, Inc.'s Motion For Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-8-