UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VERISIGN, INC., | Case No. 2:15-cv-00871-TSZ |
| Plaintiff, | Re:  Subpoena Issued In Civil Action No. 1:14-CV-01749 (E.D. Va.) |
| vs. | |
| XYZ.COM, LLC AND DANIEL NEGARI, | VeriSign, Inc.'s Reply Brief in Further Support of Its Motion for Reconsideration and Disposition of Its Outstanding Motion to Compel |
| Defendants. | |
| | Note On Motion Calendar:  July 24, 2015 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VeriSign, Inc.'s Reply Brief in Support of
Its Motion for Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Phone: (206) 905-7000

1   **REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION**

2   Under Rule 7(h) of the Local Civil Rules, a district court may reconsider a prior ruling if

3   a party identifies new facts that would have been relevant to the court's initial decision, but could

4   not have been brought to the court's attention before its ruling.  VeriSign, Inc. ("Verisign") has

5   identified new facts and has met that burden here.

6   The emails Defendant XYZ.com LLC ("XYZ") produced on the eve of the Court's ruling

7   regarding Donuts Inc.'s Motion to Quash confirm a close relationship between Donuts and the

8   Defendants in the underlying action and prove that Donuts' CEO has been advising XYZ on how

9   to conduct the litigation with Verisign pending in the Eastern District of Virginia.  Confronted

10  with this new information, Donuts does not refute that there is a more significant connection

11  between Donuts and the Defendants than indicated in the company's prior representations to this

12  Court.  Instead, Donuts now relies on carefully crafted arguments that attempt to attack the link

13  between the new emails and Verisign's claims in the underlying litigation.  The company's

14  contentions, however, miss the mark.  The sole issue before the Court is whether these new

15  emails tend to show that internal Donuts communications regarding Daniel Schindler's NPR

16  appearance may be relevant to Verisign's claims in the underlying case.  In light of the true

17  nature of the relationship between Donuts and the Defendants, now revealed by this new

18  evidence, it is clear that Donuts likely has documents that are relevant to Verisign's claims.

19  Throughout this dispute, Donuts has maintained that it is a complete stranger to the

20  underlying case.  The company has expressed ignorance regarding the subject matters of that

21  litigation and has insisted that the burdens associated with responding to the subpoena outstrip

22  the potential relevance of any documents in its possession.  The newly discovered emails

23  between Donuts' CEO, Paul Stahura, and Defendant Daniel Negari have demonstrated that both

24  of those contentions are false.  To the extent the Court's decision placed any weight on the

25  arguments advanced by Donuts based on the burdens of compliance with the subpoena—

26  arguments that rested solely on its status as an innocent third-party—that ruling should be

27  reconsidered.  Similarly, to the extent that the Court concluded that Donuts was not likely to

28  
VeriSign, Inc.'s Reply Brief in Support of
Its Motion for Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-1-

1   have documents relevant to the underlying litigation based on its non-party status, the new

2   evidence demonstrating that its CEO has been advising XYZ on how to defend the claims

3   advanced by Verisign proves that there likely are relevant documents in Donuts' files.

4          Donuts cannot hide its substantial and direct relationships to both the Defendants and the

5   underlying litigation itself.  And against the backdrop of those relationships, Donuts can no

6   longer avail itself of claims of "burden" to shield relevant evidence from discovery.  From its

7   opening Motion to Quash, which was supported by an affidavit submitted by XYZ's and

8   Negari's counsel, to its most recent submission to the Court, which sought to diminish the true

9   nature of the communications between Stahura and Negari, Donuts has gone to great lengths to

10  curtail discovery that is highly relevant to Verisign's claims.  Enough is enough.  The charade is

11  over, and it is time for Donuts to comply with its discovery obligations.  This is especially so

12  given the very broad discovery allowed under the Federal Rules.  *See* Fed. R. Civ. P. 26.

13  **I.      The Newly Discovered Emails Show That Donuts Likely Has Relevant Documents.**

14          The newly discovered emails produced by XYZ show that Donuts' Chief Executive

15  Officer, Paul Stahura, provided secret advice to Negari regarding the underlying litigation.

16  Specifically, the emails reveal Stahura urged Negari to use the case as an opportunity to:

17          •      "get a ton of discovery out of Verisign;"

18          •      determine whether Verisign was "discounting" or offering "rebates;" and

19          •      obtain documents from Verisign's business partners, including GoDaddy.

20  *See* ECF No. 16, at 3-4.  Confronted with this stark evidence showing the nature of the

21  communications between Stahura and Negari, Donuts now seeks to dismiss Stahura's

22  commentary as "facetious" remarks.  ECF No. 20, at 4.  Viewed in the proper context, however,

23  the company's claim that the exchange between Stahura and Negari was nothing more than

24  "banter between two people in the same industry" is not credible.  *Id*.

25          Stripped of its surrounding rhetoric, Donuts' argument that Stahura's statements were

26  "facetious" stands alone and unsupported in its brief.  The company has not submitted any

27  evidence to support its contention that Stahura's remarks were made in jest.  Most notably,

28  VeriSign, Inc.'s Reply Brief in Support of                    Quinn Emanuel Urquhart & Sullivan LLP
    Its Motion for Reconsideration                                600 University Street, Suite 2800
    Case No. 2:15-cv-00871-TSZ                                    Seattle, WA 98101
                                    -2-                           Phone: (206) 905-7000

1    Donuts did not submit any sworn affidavit from Stahura attempting to explain his remarks, nor

2    did it provide any other emails to show his comments were not to be taken seriously.  The

3    absence of such materials is telling, particularly because the Defendants have followed Stahura's

4    advice and sought a "ton" of discovery from Verisign and GoDaddy.  *See* ECF No. 16, at 3-4.

5         The fact remains, contrary to Donuts' prior representations to this Court, *see, e.g.*, ECF

6    No. 1, at 1, that Donuts and Stahura are intimately familiar with the Defendants and the details of

7    the underlying litigation.  Consequently, an order requiring Donuts to produce internal

8    communications regarding Daniel Schindler's NPR appearance is necessary and would be

9    reasonable.  Given the nature of the relationship between Donuts and the Defendants, candid

10   exchanges between Stahura, Schindler, or other Donuts employees are likely to provide

11   invaluable insight into Negari's state of mind at the time of his false statements during the NPR

12   program, which is relevant to Verisign's claim for attorney's fees under the Lanham Act.

13   **II.    Donuts Ignores the Importance of the Relationship Between Stahura and Negari.**

14        Each of the arguments advanced by Donuts in response to Verisign's Motion for

15   Reconsideration ignores the significance of the relationship between Stahura and Negari.

16        *First*, contrary to Donuts' contentions, Verisign does not need to show that the newly

17   discovered emails are *themselves* relevant to its claims in the underlying case.[1]  *Cf.* ECF No. 20,

18   at 2-3.  Rather, Verisign must only show that the newly discovered emails have independent

19   significance for the purpose of resolving this discovery dispute.  Verisign has met that burden.

20   The newly discovered emails prove that there is a substantial connection between Donuts and the

21   Defendants, and as the strength of that connection has become more apparent, it has confirmed

22   that Donuts is likely to have relevant, responsive documents in its possession.

23        *Second*, Verisign does not need to prove that the newly discovered emails reflect Negari's

24   _____

25        [1]  Moreover, Donuts' claim that "the email has nothing to do with the object of the subpoena
     request itself," ECF No. 20, at 2, is false.  Through its pending Motion for Reconsideration,
     Verisign has asked the Court to compel production in response to the first request in its
26   subpoena, which seeks "All communications to, from, or copying Defendants relating to
     Verisign or the .COM gTLD from January 1, 2012 to present."  ECF 8-11, at 1.  The newly
27   discovered emails between Stahura and Negari are responsive to that request.

28   VeriSign, Inc.'s Reply Brief in Support of                    Quinn Emanuel Urquhart & Sullivan LLP
     Its Motion for Reconsideration                                600 University Street, Suite 2800
     Case No. 2:15-cv-00871-TSZ                                    Seattle, WA 98101
                                    -3-                            Phone: (206) 905-7000

1   state of mind at the time of his false statements on the NPR program.  Instead, the relevant

2   question is whether there are likely to be *other* documents within Donuts' files that shed light on

3   Negari's state of mind at the time of his false statements.  Again, the newly discovered emails

4   reflect the link between Donuts and the XYZ Defendants, which runs directly through the firms'

5   respective Chief Executive Officers.  That relationship, combined with an appearance from

6   Daniel Schindler, one of Donuts' co-founders, on the same NPR program in which Negari made

7   the false statements at issue in the underlying litigation, is significant.  Considered together,

8   these factors establish that Donuts is likely to have relevant evidence, and they diminish any

9   concerns regarding discovery burdens that might otherwise apply to non-parties.

10      *Third*, Donuts' argument that the new emails are irrelevant because they involve

11  communications with Stahura, instead of communications with Schindler, cannot withstand

12  scrutiny.  Stahura communicated with Negari in his capacity as Donuts' CEO, and Schindler

13  appeared on the NPR program in his capacity as a co-founder of Donuts.  The frequency of the

14  interactions between the Defendants and these key Donuts employees establishes that relevant

15  documents likely reside in Donuts' files.

16      Verisign requests that the Court reconsider its decision to quash parts of its subpoena, and

17  order Donuts, in light of this new information, to make a full and complete production in

18  response to the subpoena.  *Cf.* Order ¶ 2(a), ECF No. 13.

19      **REPLY IN FURTHER SUPPORT OF OUTSTANDING MOTION TO COMPEL**

20      Verisign respectfully requests that the Court dispose of the matters that remain

21  outstanding from its initial motion to compel, which relate to communications between XYZ and

22  Donuts regarding Verisign or the availability of .COM domain names.  *See* ECF No. 13.  Donuts

23  opposes such discovery, arguing that Verisign already obtained complete discovery from XYZ

24  and therefore the subpoena is duplicative.  This is simply incorrect.  First, the Federal Rules do

25  not limit discovery to just one party to a relationship or pattern of communication.  Indeed, it is

26  the comparison of such documents (or deleted documents) that often proves most relevant in

27  litigation.  Second, Donuts' argument ignores what is increasingly becoming clear:  XYZ is

28  
VeriSign, Inc.'s Reply Brief in Support of
Its Motion for Reconsideration
Case No. 2:15-cv-00871-TSZ

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000

-4-

1    purposefully taking steps to obfuscate discovery.  Not only has Verisign had to move for court

2    intervention in Virginia, it recently discovered that XYZ utilizes email accounts that have never

3    been searched for responsive discovery.  This Court should order Donuts to make full discovery.

4           As discovery in the underlying case has confirmed, Verisign's suspicion that the XYZ

5    Defendants' document retention policies permitted deletion of relevant emails was well-founded.

6    *See* ECF No. 16, at 6.  In his most recent deposition, Negari acknowledged that he deletes emails

7    in the ordinary course of business, Weigand Aff. Ex. 1, D. Negari Dep. 106:13-16 (July 6, 2015),

8    and he admitted that his emails can also be deleted when his email inbox reaches its capacity

9    limit, *id*. at 107:1-10.  Consequently, Negari's testimony indicates that relevant evidence may no

10   longer exist in XYZ's files and confirms that Verisign is entitled to discovery of responsive

11   communications from Donuts' files.

12          Moreover, contrary to the misleading arguments in Donuts' brief, *see* ECF No. 20, at 5,

13   Verisign expressly withdrew its prior motion to compel *without prejudice* to allow further

14   examination of XYZ's production and to provide time to meet and confer.  ECF No. 16-1,

15   DePalma Aff. ¶ 6.  Indeed, through that process, on July 22, 2015, Verisign discovered that XYZ

16   employees, including Negari, use "Cyber2Media" email accounts to send information that is

17   directly relevant to XYZ and the underlying case.  Weigand Aff. ¶¶ 4-6.  Defendants did not

18   search their Cyber2Media email accounts to respond to discovery, and Verisign has moved to

19   compel production from those accounts.  Motion to Compel, *VeriSign, Inc. v. XYZ, et al.,* Case

20   No. 1:14-cv-01749 CMH-MSN (E.D. Va. July 24, 2015) (ECF No. 169).  Emails Negari sent to

21   Donuts personnel from his Cyber2Media account have not been produced in the Virginia action,

22   and that is an additional reason the Court should compel Donuts to make the production here.

## CONCLUSION

23

24          In light of the foregoing, Verisign respectfully requests that the Court (1) reconsider its

25   June 15, 2015 order granting Donuts' Motion to Quash with respect to internal Donuts

26   communications regarding Schindler's NPR appearance; and (2) with respect to the outstanding

27   matters in the initial motion, order Donuts to provide a full response to Verisign's subpoena.

28   VeriSign, Inc.'s Reply Brief in Support of               Quinn Emanuel Urquhart & Sullivan LLP
     Its Motion for Reconsideration                           600 University Street, Suite 2800
     Case No. 2:15-cv-00871-TSZ                               Seattle, WA 98101
                                            -5-               Phone: (206) 905-7000

1   DATED: July 24, 2015                    Respectfully submitted,

2                                           QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
3

4

5                                           By  */s/ Jenny A. Durkan*
                                               Jenny A. Durkan
6                                              Attorneys for VeriSign, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   VeriSign, Inc.'s Reply Brief in Support of              Quinn Emanuel Urquhart & Sullivan LLP
     Its Motion for Reconsideration                                    600 University Street, Suite 2800
     Case No. 2:15-cv-00871-TSZ                                                    Seattle, WA 98101
                                            -6-                              Phone: (206) 905-7000

1

**CERTIFICATE OF SERVICE**

2

I, Jenny Durkan, am a partner at Quinn Emanuel Urquhart & Sullivan, LLP, and I

3

represent VeriSign, Inc. in this action.  I hereby certify that on July 24, 2015, I caused the

4

foregoing document to be served on Donuts Inc. by filing the document through ECF and

5

emailing the company's counsel of record at the addresses below:

6

7

Thomas L. Boeder
TBoeder@perkinscoie.com

8

Elvira Castilllo
ECastillo@perkinscoie.com

9

10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099

11

12

I declare under the penalty of perjury that the foregoing is true and correct.

13

14

DATED: July 24, 2015                    Respectfully submitted,

15

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

16

17

18

By  /s/ Jenny A. Durkan

19

Jenny A. Durkan
Attorneys for VeriSign, Inc.

20

21

22

23

24

25

26

27

28

VeriSign, Inc.'s Reply Brief in Support of
Its Motion for Reconsideration
Case No. 2:15-cv-00871-TSZ

-7-

Quinn Emanuel Urquhart & Sullivan LLP
600 University Street, Suite 2800
Seattle, WA 98101
Phone: (206) 905-7000